## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**PERCEPTRON, INC., a Michigan Corporation,**

      **Plaintiff,**

**v.**

**SILICON VIDEO, INC., a Delaware Corporation and PANAVISION IMAGING, LLC, a Delaware limited Liability company,**

      **Defendants.**

**Case No. 4:05cv40117**
**Honorable Paul V. Gadola**
**Magistrate Judge Morgan**

_____/

**BUTZEL LONG**
By:  **Michael J. Lavoie (P32584)**
     **George B. Donnini (P66793)**
     **Ian A. Northon (P65082)**
150 W. Jefferson, Suite 100
Detroit, MI  48226
(313) 225-7000
**Attorneys for Plaintiff**

**BARRIS, SOTT, DENN & DRIKER, P.L.L.C.**
By:  **Todd R. Mendel (P55447)**
     **Matthew J. Bredeweg (P67796)**
211 West Fort Street, 15th Floor
Detroit, MI  48226-3281
(313) 965-9725
**Attorneys for Defendants**

_____/

## PLAINTIFF'S RESPONSE BRIEF TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR FOR TRANSFER OF VENUE UNDER 28 U.S.C. § 1404(a)

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

STATEMENT OF ISSUES PRESENTED.................................................. iii

INDEX OF AUTHORITIES ............................................................ iv, v

I.    INTRODUCTION AND ARGUMENT SUMMARY .......................................... 1

II.   STATEMENT OF RELEVANT FACTS........................................................ 2

    A.  Procedural History Of This Case .......................................... 2

    B.  Procedural History Before The Filing Of This Action ......................... 3

    C.  Jurisdictional Allegations.................................................. 3

III.  ARGUMENT .................................................................... 5

    A. The Complaint's Allegation Of Personal Jurisdiction Over
       Defendants Based On Their Successor Corporate Liability
       Is Unchallenged By Defendants And Legally Adequate...................... 5

    B. The Complaint's Underlying Allegations Supporting Defendants'
       Corporate Successor Jurisdiction Are Unchallenged By
       Defendants And Legally Adequate......................................... 6

        1.  Defendants do not challenge the allegations of corporate
            successor liability that underlie jurisdiction ...................... 6

        2. Beyond Defendants' failure to challenge the specific successor
           liability allegations, jurisdiction over Defendants is proper ........... 8

           a.  The exercise of jurisdiction over Defendants comports with
              due process................................................... 8

               i.  Defendants purposefully availed themselves of Michigan
                   laws .................................................... 9

               ii. The exercise of personal jurisdiction over defendants
                  comports with traditional notions of fair play and
                  substantial justice.................................... 11

        **b.  Defendants come within the terms of the Long-Arm Statute** .............................................................................  12

    **C. The Balance Of Defendants' Arguments Are Inapplicable And Have No Impact Upon The Finding Of Jurisdiction** ............................  14

        **1.  Defendants' focus on a general jurisdictional analysis is misplaced** ............................................................  14

        **2.  Defendants misapply the Long-Arm Statute** ...................  15

        **3.  Defendants' restricted definition of express assumption of liability is not supported by Michigan law** ........................  16

        **4.  Defendants' disclaimers of liability under New York or Michigan corporate law are erroneous and, in any event, untimely at this stage of the proceedings** ........................  17

    **D. Transfer Of Venue Is Inappropriate Where Michigan And The Plaintiff Have A Strong Interest In Litigating Here And Where Defendants Otherwise Fail To Meet Their Burden** ..............................  19

**IV.  CONCLUSION** ..............................................................  20

## STATEMENT OF ISSUES PRESENTED

1.    Should this Court exercise limited personal jurisdiction where the Complaint's allegations of personal jurisdiction over Defendants based on their successor corporate liability are unchallenged by Defendants and legally adequate?

2.    Should this Court exercise limited personal jurisdiction over Defendants where the Complaint's underlying allegations supporting corporate successor jurisdiction are unchallenged by Defendants and legally adequate?

3.    Should this Court deny the Motion to transfer of venue where venue is appropriate, where both Michigan and Plaintiff have a strong interest in litigating here and where Defendants otherwise fail to meet their burden?

## INDEX OF AUTHORITIES

**Cases**                                                                                    **Page**

*American Buying Ins. Serv. v. S. Kornreich & Sons*,
944 F. Supp. 240, 249 (S.D.N.Y. 1996) ................................................................. 18

*Antiphon v. LEP Transport, Inc.*,
183 Mich. App. 377 (1990) ................................................................................... 15

*Arnold Graphics Indus. Inc. v. Independent Agent Center, Inc.*,
775 F.2d 38, 42 (2nd Cir. 1985) ........................................................................... 19

*Audi AG v. Bob D'Amato*,
341 F. Supp. 2d 734, 740 (E.D. Mich. 2004) ....................................................... 7,19

*Audi AG v. Izumi*,
204 F. Supp. 2d 1014, 1023 (E.D. Mich. 2002) ................................................... 19

*CompuServe, Inc. v. Patterson*,
89 F.3d 1257, 1262 (6th Cir. 1996) ...................................................................... 6

*Green v. Wilson*,
455 Mich. 342, 565 813 (1997) ............................................................................ 5,8

*Int'l Shoe v. Washington*,
326 U.S. 310, 319, 66 S. Ct. 154, 90 (1945) ....................................................... 8

*Jeffrey v. Rapid American Corp.*,
448 Mich. 178, 529 N.W. 2d 644 (1995) .............................................................. 1,5-11,13,
                                                                                                             15-17

*Khalaf v. Bankers & Shippers Ins. Co.*,
404 Mich. 134 (1978) ........................................................................................... 9

*Kidz Cloz, Inc. v. Officially for Kids, Inc.*,
2002 U.S. Dist. LEXIS 13058 (S.D.N.Y. 2002) ................................................... 18

*McNic Oil and Gas Co. v. Ibex Resources Co., LLC*,
23 F. Supp. 2d 729, 738 (E.D. Mich. 1998) ......................................................... 19,20

*Mozdy v. Lopez*,
197 Mich. App. 356, 359, 494 866 (1992) ............................................................ 7,9

*Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*,
91 F.3d 790. 793 (6th Cir. 1996) .......................................................................... 13

*Neagos v. Valmet-Appleton, Inc.,*
  791 F. Supp. 682, (1992) ........................................................................... 15

*Poly-America, Inc. v. Shrink Wrap Int'l*,
  200 Mich. App. LEXIS 1580 (Oct. 10 2000) ............................................. 15

*SEMCO Energy Serv., Inc. v. Black Hills Energy Resources, Inc.,*
  1999 US Dist. LEXIS 11843, *9 (E.D. Mich. 1999) .................................. 12

*Sifers v. Horen,*
  385 Mich. 195, 188 N.W. 2d 623, 624 (1971) ......................................... 12

*Starbrite Distrib. v. Excelda Mfg. Co.,*
  454 Mich. 302, 562 N.W. 2d 640 (1997) ............................................. 5,8,11

*Turner v. Bituminous Casualty Co.,*
  397 Mich. 406, 244 N.W. 2d 873 (1976) .............................................. 18,19

*Viches v. MLT, Inc.,*
  127 F. Supp. 2d 828, 830 (E.D. Mich. 2000) .......................................... 13

*Wiles v. B E Wallace Products Corp*,
  25 Mich. App. 300, 303-305, 181 N.W. 2d 323 (1970).............................. 7

*Witbeck v. Bill Cody's Ranch Inn*,
  428 Mich. 659, 665-666; 411 N.W.2d 439 (1987) ................................... 8

## **Statutes**

M.C.L. § 600.715(1) .................................................................................... 6

28 U.S.C. § 1404(a) ...................................................................................... 3

## **Other**

15 Fletcher Cyc. Corp. § 7082, p. 124 (1999) .......................................... 10

15 Fletcher Cyc. Corp. § 7045.10, pp. 32-35 (1999) ............................... 19

## I.    INTRODUCTION AND ARGUMENT SUMMARY

In this case Perceptron, Inc. ("Perceptron") seeks to enforce a valid Michigan judgment against two corporate successors:  Defendants, Silicon Video, Inc. ("SVI") and Panavision Imaging, LLC ("Panavision").[1]  This judgment stems from a valid underlying contract, the License and Development Agreement ("Agreement"), between Perceptron and Defendants' corporate predecessor, Photon Vision Systems, Inc. ("PVS").[2] Defendants' assertion that this Court cannot exercise personal jurisdiction over them is erroneous and contrary to law.  Here, the law, the allegations, and the evidence all demonstrate the clear adequacy of personal jurisdiction over these Defendants.

First, the plainly alleged and legally established basis for jurisdiction over SVI and Panavision is corporate successor liability.  Defendants provide no legal authority invalidating this as a proper basis for exercising jurisdiction over them.   While Defendants focus on other business contacts as being inadequate, these are not the grounds for jurisdiction alleged in this Complaint.  Michigan clearly allows the imputation of a corporate predecessor's jurisdictional contacts to a successor corporation as a basis for jurisdiction when, as here, it is constitutionally fair and reasonable.  *Jeffrey v. Rapid American Corp.*, 448 Mich. 178, 181, 529 N.W. 2d 644 (1995).

---

[1] See Wayne County Circuit Court Judgment, *Perceptron, Inc. v. Photo Vision Systems, Inc.*, Case No. 04-409737-CK, Judge Gershwin A. Drain.  Ex. 1: Judgment.  Defendants  misinform this Court by suggesting that Plaintiff "is in the process of obtaining a judgment in Michigan."  Defendants' Brief at 18. A valid judgment has already been entered in Michigan.

[2] The Agreement specifically provides that "[a]ny controversy or claim between the parties involving the construction or application of any of the terms, provisions or conditions of this Agreement . . . shall be exclusively settled by binding arbitration."  See Ex. 2: Agreement, ¶ 20.  In addition, the parties agreed that any subsequent award issued by an arbitrator "may be entered as a final judgment in any court of competent jurisdiction."  Id.  (emphasis added).

Second, not only do Defendants fail to offer any challenge to successor liability as being an adequate legal basis for jurisdiction, they offer not a scintilla of argument or evidence challenging the factual allegations supporting successor liability jurisdiction. Indeed, contrary to Defendants' claims of absence of factual allegations, there are extensive and detailed allegations about Defendants' roles as successor corporations in terms of continuity of business, ownership, management, personnel, and location.  Not a single one of these allegations is refuted anywhere in Defendants' motion.  Moreover, Defendants even fail to challenge jurisdiction over PVS, Defendants' predecessor corporation.  Thus, Defendants fail to offer any argument or evidence to defeat the underlying alleged factual basis for jurisdiction.

Third, unable to mount a valid challenge to jurisdiction, Defendants ignore the well-pled basis for this Court to exercise jurisdiction by using the remainder of their Brief to proffer a litany of irrelevant facts about general jurisdiction and liability.

Finally, transfer of venue is inappropriate where both Michigan and Plaintiff have a strong interest in litigating here and where Defendants otherwise fail to meet their burden of proof.

## II.     STATEMENT OF RELEVANT FACTS

### A.     Procedural History Of This Case.

On March 14, 2005, the Complaint in this action was filed in Wayne County Circuit Court.  Ex. 3:  Complaint.  On April 12, 2005, Defendants filed removal papers thereby effectuating the removal of the action to this Court.   On May 3, 2005,

Defendants filed their Motion to Dismiss for Lack of Personal Jurisdiction or for Transfer of Venue Under 28 U.S.C. § 1404(a).

Discovery has not yet occurred in the case except, however, Perceptron served document requests upon SVI and Panavision with the filing of its Complaint. SVI and Panavision have refused to comply with those discovery requests. Ex. 4: Correspondence of Todd Mendel dated May 5, 2005.

**B.**     **Procedural History Before The Filing Of This Action.**

This controversy first arose out of a commercial dispute between Perceptron and PVS. Ex. 2: Agreement. An arbitration proceeding then ensued as required under the Agreement. On March 24, 2004, the American Arbitration Association transmitted the Arbitration Award in favor of Plaintiff. Ex. 5: Arbitration Award. On April 1, 2004, Plaintiff filed an action in Wayne County Circuit Court seeking to confirm the Award against PVS that was assigned to Judge Gershwin A. Drain. On March 15, 2005, Judge Drain granted Perceptron's Motion to Confirm Arbitration Award and entered a final judgment against PVS. Ex. 1: Judgment.

Perceptron now alleges in the instant case that SVI and Panavision are jointly and severally liable as successors in interest to PVS for the full amount of the Judgment of $2,870,897.43 plus interest. Ex. 3: Complaint, ¶¶ 8-12.

**C.**     **Jurisdictional Allegations.**

SVI and Panavision are specifically alleged to be successors in interest to PVS and, thus, are subject to the jurisdiction of this Court. Ex. 3: Complaint, ¶¶ 5 and 7.

Although Perceptron spells out in detail the grounds for successor liability and jurisdiction over SVI and Panavision, these grounds are completely ignored by Defendants.  Specifically, SVI is alleged to be a continuation of PVS:

a.  There is a continuity of physical location in that both PVS and SVI have as their business address, One Technology Place, Homer, N.Y. ;

b.  There is a continuity of management in that PVS and SVI shared at least two common managers, to wit: Jeff Zarnowski and Terry Zarnowski;

c.  There is a continuity of personnel in that, at a minimum, the following former PVS employees became employees of SVI: (i) Jeff Zarnowski; (ii) Dawn Zarnowski; (iii) Michael Joyner; (iv) Ketan Karia; and (v) Terry Zarnowski.  In addition, PVS' former CEO, Tom Vogelsong, was hired as a consultant by SVI;

d.  There is a continuity of assets in that all of PVS' assets were transferred to SVI on or about March 27, 2003;

e.  There is a continuity of general business operations in that SVI and PVS were both engaged in research and development of digital imaging products.  Similarly, SVI customers include former customers of PVS;

f.  There is a continuity of ownership in that a number of equity investors of PVS also held equity stakes in SVI;

g.  After PVS allegedly ceased its ordinary business operations immediately after March 27, 2003, SVI held itself out to the world as the effective continuation of PVS; and

h.  Upon information and belief, PVS is incapable of satisfying any of the outstanding liability owed to Perceptron.  Ex. 3: Complaint, ¶ 25.

Further, Panavision is alleged to be a continuation of PVS:

a.  There is a continuity of physical location in that both PVS and SVI have as their business address, One Technology Place, Homer, N.Y.;

b.  There is a continuity of management in that PVS, SVI, and Panavision shared at least one common manager, to wit: Terry Zarnowski;

c.  There is a continuity of assets in that all of SVI's (and consequently PVS') assets were transferred to Panavision on or about December 2003;

d.  There is a continuity of general business operations in that Panavision, SVI, and PVS were each engaged in research and development of digital imaging products.  Similarly, current Panavision customers include former customers of SVI and PVS;

e.  After SVI allegedly ceased its ordinary business operations immediately after December 16, 2003, Panavision held itself out to the world as the effective continuation of PVS and SVI;

4

f.    Upon information and belief, there is some continuity of ownership as Cayuga continues to hold an equity position in the original PVS assets, as of at least July 30, 2004, whereupon Cayuga publicly refers to Panavision SVI, LLC as one of its portfolio companies; and

g.    Upon information and belief, PVS is incapable of satisfying any of the outstanding liability owed to Perceptron.  Ex. 3: Complaint, ¶ 26.

While SVI and Panavision submit two Declarations addressing their business contacts in Michigan, there is no evidence or argument presented refuting the above allegations of continuity of enterprise.   Similarly, SVI and Panavision present no challenge to the Court's jurisdiction over their predecessor,  PVS.

### III.    ARGUMENT

**A.    The Complaint's Allegation Of Personal Jurisdiction Over Defendants Based On Their Successor Corporate Liability Is Unchallenged By Defendants and Legally Adequate.**

As set forth above, the grounds asserted by Perceptron for jurisdiction over SVI and Panavision are based on corporate successor liability of these entities for the judgment entered against their predecessor, PVS.  The first issue presented, therefore, is whether allegations of corporate successor liability are a legally adequate basis for the exercise of this Court's jurisdiction over SVI and Panavision.  Defendants fail to and indeed cannot cite any Michigan authority rejecting corporate successor liability as an adequate ground for assertion of jurisdiction.  Indeed, Michigan law clearly recognizes this as an adequate basis for the exercise of jurisdiction.   Under Michigan law, the jurisdictional contacts of a corporate predecessor may be imputed to its corporate successors. *Jeffrey v. Rapid American Corp.*, 448 Mich. 178 at 182;  *See also Green v. Wilson*, 455 Mich. 342, 565 N.W. 2d 813 (1997); *Starbrite Distrib. v. Excelda Mfg Co.*, 454 Mich. 302, 562 N.W. 2d 640 (1997).

In *Jeffrey*, the Michigan Supreme Court imputed the business contacts of a predecessor corporation to its corporate successors who acquired the predecessor's assets, part of which derived from the predecessor's contacts with the State of Michigan.  Specifically, through a series of mergers, asset purchases, and the shedding of obsolete corporate entities, a sophisticated corporate defendant, Rapid American, "as a successor to old Carey, reaped the benefits of old Carey's Michigan business and correspondingly should be held to the same jurisdictional qualities of its predecessor." *Jeffrey* at 199-200.  The court concluded that the plaintiff alleged sufficient jurisdictional facts that, if proven, would establish limited jurisdiction over the defendant Rapid American based on the action of old Carey under M.C.L. § 600.715.  *Jeffrey* at 206.

Here, Defendants do not challenge the legal sufficiency of the corporate successor jurisdictional allegation, nor can they.   Instead, Defendants ignore the allegations and concede, as they must, that this Court can rule on the jurisdiction issue based on the Complaint alone.  Defendants' Brief at 4, *citing CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  Indeed, that is exactly what this Court should do.  Plaintiff has more than sufficiently pled the basis for jurisdiction.  Therefore, like in *Jeffrey*, there are no grounds for dismissal.

**B.   The Complaint's Underlying Allegations Supporting Defendants' Corporate Successor Jurisdiction Are Unchallenged By Defendants And Legally <u>Adequate</u>.**

> **1.   Defendants do not challenge the allegations of corporate successor <u>liability that underlie jurisdiction</u>.**

Not only do Defendants fail to contest the actual basis for jurisdiction, they also ignore the factual allegations supporting it.  Contrary to Defendants' repeated contention

that Plaintiff has not alleged any facts, the grounds for jurisdiction based on Defendants'
corporate successor liability are set forth in lengthy and exhaustive detail.  Ex. 3:
Complaint, ¶¶ 25-26.  By ignoring these allegations, Defendants make a significant
mistake because they fail to offer any evidence or argument contravening them.  While
the plaintiff bears the burden of establishing personal jurisdiction over the defendant, it
need only make a *prima facie* showing of jurisdiction to defeat a motion for summary
disposition.  *Jeffrey* at 185 *citing Mozdy v. Lopez*, 197 Mich. App. 356, 359, 494 N.W.
2d 866 (1992); *see also Audi AG v. Bob D'Amato*, 341 F. Supp. 2d 734, 740 (E.D. Mich.
2004) ("[t]o avoid dismissal where there has been no evidentiary hearing, a plaintiff
need only present a *prima facie* case for jurisdiction.").  In addition, "[a] court must
consider all affidavits and pleadings in the light most favorable to plaintiffs, and <u>does not</u>
<u>weigh the controverting assertions</u> of the party seeking dismissal."  *Id.*; *See also Wiles*
*v. B E Wallace Products Corp*, 25 Mich. App. 300, 303-305, 181 N.W.2d 323 (1970).

Further, Defendants attempt to minimize Plaintiff's allegations by contending that
Defendants' Predecessor merely "had some of its assets foreclosed."  *See* Defendants'
Statement of the Issues at ii, ¶ 2.  This is not what Plaintiff alleges.  Instead, Plaintiff
alleges much more by stating that there is a continuity of corporate operations and that
Defendants are successors in interest to PVS.[3]

Defendants' failures to challenge jurisdiction even extend to the underlying
jurisdiction against Defendants' predecessor, PVS.  Defendants do not challenge the
jurisdiction of this Court over the predecessor entity, PVS.  Indeed, there could be no

---

[3] At a minimum, Defendants introduction of additional and contradictory facts, creates a triable issue of
material fact necessitating dismissal of their motion to dismiss.

such challenge as PVS' conduct of business in Michigan included not only the Agreement but also its employees came to Perceptron's offices on several occasions.[4]

While the issue of whether a court can exercise personal jurisdiction over successor corporations is a factual question, the factual allegations in the Complaint are clearly sufficient when taken in the light most favorable to the Plaintiffs. *Jeffrey, supra*; *Green, supra*; and *Starbrite, supra.*   Thus, these allegations clearly constitute a sufficient--and here uncontroverted--*prima facie* case for jurisdiction.

**2.   Beyond Defendants' failure to challenge of the specific successor liability allegations, jurisdiction over Defendants is proper.**

When determining whether to exercise limited personal jurisdiction over a defendant, courts generally apply a two-step analysis.   First, the exercise of limited personal jurisdiction must be consistent with the requirements of due process. *Witbeck v. Bill Cody's Ranch Inn*, 428 Mich. 659, 665-666; 411 N.W. 2d 439 (1987); *Modzy* at 358.   Second, a defendant must come within the terms of the Michigan long-arm statute. *See* MCL § 600.715; *Witbeck* at 666.

**a.   The exercise of jurisdiction over Defendants comports with Due Process.**

The Due Process Clause of the Fourteenth Amendment limits the jurisdiction of state courts such that a valid judgment affecting an out-of-state corporation's rights may only be entered by a court having personal jurisdiction over that defendant. *Int'l Shoe v. Washington*, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L. Ed. 95 (1945).   A court may

---

[4] Because the jurisdiction of PVS is not challenged, there is no need for the submission of any affidavit on this point.  If necessary, Perceptron could readily submit such an affidavit.

acquire personal jurisdiction over a foreign corporation when its relationship with the forum is such that it is "fair" to require the defendant to appear before the court. That means when the defendant possesses "minimum contacts" with the forum.  *Id.*

A defendant must "have certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *Id.* at 316.  Whether sufficient minimum contacts exist between a defendant and Michigan to support personal jurisdiction is determined by looking at the defendant's conduct.  Courts look to determine whether the defendant corporation "purposefully availed" itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this State's laws.  *Mozdy* at 359.

> ### i.   Defendants purposefully availed themselves of Michigan laws.

The *Khalaf* court defined purposeful availment in the following way:

> A "purposeful availment" is something akin either to a <u>deliberate undertaking</u> to <u>do or cause an act or thing to be done in Michigan</u> or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities.  The defendant will have reason to foresee being "haled before" a Michigan court.  *Jeffrey* at 187 *citing Khalaf v. Bankers & Shippers Ins Co*, 404 Mich. 134 (1978) (emphasis added).

Here, Panavision and SVI purposefully availed themselves of the Michigan courts when they accepted the benefits of the Agreement.  By accepting those benefits and by continuing to do business in a way that was nearly indistinguishable from PVS, Defendants' activities were directed toward Michigan.  Moreover, key managers at SVI and Panavision knew of the underlying dispute and ongoing negotiations between PVS and Perceptron prior to acquiring the PVS assets.  Ex. 6: See, e.g. some notice

correspondence with Zarnowski and Vogelsong.[5]  SVI and Panavision had to see this day of reckoning coming.  Michigan has an "important interest" in protecting its corporate citizens from such corporate fancy footwork and "providing a convenient forum for injuries inflicted by nonresident corporations."  *Jeffrey* at 186-187.

Further, neither New York nor Michigan law supports Defendants' notion that they are immune from the consequences of this voluntary undertaking by casting it as merely "accepting some collateral" when, as here, it is alleged that PVS gave SVI and Panavision <u>all of its assets</u> before it dissolved and there are numerous other management, personnel, and business points of continuity.  When Defendants picked up the assets and continued to do business as PVS, they consummated a *de facto* merger.  Indeed, as the Court in *Jeffrey* notes, "[w]hen two or more corporations merge, the surviving corporation succeeds to all the liabilities of the constituent corporations. *Jeffrey* at 190.  See also, 15 Fletcher Cyc. Corp. § 7082, p. 124 (1999). Moreover, there is no authority to support Defendants' assertion that compliance with an unrelated provision of the UCC immunizes them from contractual liability.

The Agreement expressly provides for enforcement of arbitration proceedings in any state of competent jurisdiction.  Ex. 2: Agreement, ¶ 20.  Had Perceptron, for example, been in breach of this Agreement, the successor Defendants could have sought enforcement thereunder in Michigan against Perceptron.  This also constitutes purposeful availment of the protections of Michigan law.  As in *Jeffrey*,

---

[5] Interestingly, Defendants do not dispute that they had knowledge of the suit against PVS.  Rather, they state that the arbitration demand and suit was filed after SVI had acquired PVS' assets.  Defendants' Brief at p.3.

> …[the successor] could have, at least in theory, availed itself of Michigan law in enforcing those rights, at least insofar as its claims arose out of old Carey's dealings in Michigan.  It seems only fair that once this state's courts were opened to Glen Alden by virtue of old Carey's business in this state that they remain open for the victims of old Carey's alleged negligent acts.  *Jeffrey* at 200 (citation omitted).

Here, Defendants took on the cloak of PVS' jurisdiction when they continued to do business as PVS.  Accordingly, this Court should exercise jurisdiction over them.

> **ii.  The exercise of personal jurisdiction over defendants comports with traditional notions of fair play and <u>substantial justice</u>.**

Once the threshold requirement of minimum contacts is satisfied, a court must still consider whether the exercise of personal jurisdiction comports with fair play and substantial justice for each defendant.  Courts weigh the following factors in making their determinations: (i) the burden on the defendant; (ii) the forum state's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief; (iv) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the shared interest of the several states in furthering fundamental substantive social policies.  Indeed, as stated in *Jeffrey*,

> To defeat jurisdiction, a <u>defendant</u> who has purposefully directed its activities at forum residents <u>must present a compelling case</u> that the presence of some other considerations render jurisdiction unreasonable.  *Jeffrey* at 189 (citations omitted).

Here, on balance these factors strongly favor the exercise of jurisdiction over the Defendants for several reasons.  First, it is plain that the burden on Defendants to defend in Michigan is minimal.  Defendants are sophisticated corporations without the classic Due Process concerns of indigence or geographical obstacles.  *Starbrite* at 313.

Second, Michigan has a strong interest in adjudicating this matter because it adjudicated the underlying dispute against PVS.  Moreover, Michigan has a strong public policy in affording its residents the opportunity to seek redress in contractual disputes.  Third, the interstate judicial system has a strong interest in allowing Michigan to finish adjudicating the matter because of the expense and waste that would result in attempting to bring the litigation to another forum.  This is further evidenced by the New York court's refusal to adjudicate parallel claims brought by PVS with the action pending in Michigan.  Ex. 7:  NY Order dated March 16, 2005.  Fourth, all states have an interest in preventing corporate abuse.  Thus Defendants have not presented a "compelling case" why they should be immune from suit in Michigan.

### b.    Defendants come within the terms of the long-arm statute.

Defendants are the clear corporate successors of PVS whose business contacts[6] may be imputed to them for jurisdictional purposes.  As such, they easily come within the terms of Michigan's long-arm statute.  First, the Michigan Supreme Court has interpreted the Michigan long-arm statute broadly and exercises jurisdiction to the fullest extent of the constitutional limit.  *Sifers v. Horen,* 385 Mich. 195, 188 N.W. 2d 623, 624 (Mich. 1971).  When a State's long-arm statute extends to the constitutional limits of the Due Process Clause, as it does in Michigan, the two inquiries merge for all practical purposes.  *SEMCO Energy Serv., Inc. v. Black Hills Energy Resources, Inc.,* 1999 US

---

[6]The Wayne County Circuit Court implicitly rejected PVS' lack of personal jurisdiction argument when it entered judgment against PVS.  Indeed, the PVS Agreement with Perceptron explicitly consented to the enforcement of the Agreement in any court of competent jurisdiction.  Thus, PVS' contacts with Michigan were certainly not "random, fortuitous, and attenuated" because the activities (relationship with Michigan customers, Michigan contracts, etc…) represent the transaction of "any business" within the State under Michigan's long-arm statute.

Dist. LEXIS 11843, *9 (E.D. Mich. 1999) (applying Michigan law) *citing generally*, *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F. 3d 790,793 (6th Cir. 1996).  Indeed, as this Court has noted, "[t]he standard for deciding whether a party has transacted any business under § 600.715(1) is <u>extraordinarily easy to meet</u>…the only real limitation placed on this long-arm statute is the due process clause."  *Viches v.  MLT, Inc.*, 127 F Supp. 2d 828, 830 (E.D. Mich. 2000) (emphasis added).   Therefore, the statute undoubtedly applies so long as the constitutional test is satisfied.

Second, in *Jeffrey*, the court held that the contacts needed to satisfy the long-arm statute were among those jurisdictional qualities of the predecessor that were imputed to the defendant corporation:

> Old Carey [the predecessor corporation] is alleged to have transacted business in this state and to have caused acts to be done in this state that resulted in a [civil] action.
> \*\*\*
> Therefore, once it is determined that old Carey's contacts may be imputed to Rapid American [the successor corporation] it is <u>beyond question</u> that it is subject to our long-arm statute.  *Jeffrey* at 196 [emphasis added].

Defendants' declarations that they did not conduct sufficient business in Michigan to qualify for the long-arm statute are simply untenable because they ignore the business that PVS did in Michigan.  *See* Defendants' Brief at pp. 7-8.  As *Jeffrey* makes clear, the transaction of "any business" by a predecessor corporation is one of the jurisdictional contacts--here unchallenged--that courts may properly impute to a successor.  *Jeffrey* at 196.  Therefore, Defendants' effort to avoid the long-arm statute fails.

13

**C.    The Balance Of Defendants' Arguments Are Inapplicable And Have No Impact Upon The Finding Of Jurisdiction.**

      **1.    Defendants' focus on a general jurisdictional analysis is misplaced.**

Defendants introduce a litany of arguments related to general jurisdiction such as the lack of bank accounts and sales representatives in Michigan.   These general jurisdiction factors are nothing more than a red-herring because this Court is not required to make its determination based on general jurisdiction grounds.   Rather, Plaintiff asks this Court to exercise limited personal jurisdiction over Defendants under the Michigan long-arm statute and the well-recognized basis of corporate successor jurisdiction.  Of course, Plaintiff is only required to demonstrate one reasonable basis for exercising personal jurisdiction over Defendants and need not demonstrate every imaginable basis for jurisdiction under the law.

Not only do Defendants completely ignore the overwhelming connection to their predecessor entity, but their contention that "neither Defendant has any connection with the State of Michigan" presents only half-truths.  While Defendants' Declarations contain a litany of extraneous facts applicable only to a general jurisdiction inquiry, what is more revealing is what is not included therein.  For example, Defendants do not deny having sold any products to companies or consumers in Michigan, nor do they deny entering into contracts with Michigan corporations.   They only assert that they have never "entered into any contracts in Michigan."   Ex 8: Declaration of Ahlers, ¶ 3; Ex 9: Declaration of Borofsky, ¶ 3.  While the geographic location of signing a contract is one of many relevant factors in ascertaining general jurisdiction contacts, statements contained in the Defendants' Declarations are insufficient to show that they have not

transacted any business in Michigan.[7]

## 2. **Defendants misapply the Long-Arm Statute.**

In mis-applying the long-arm statute, Defendants also cite *Neagos v. Valmet-Appleton, Inc.,* 791 F. Supp. 682, (1992).  Defs.' Brief at p. 8.  First, the *Neagos* court used a pre-*Jeffrey* standard that equated liability and jurisdiction to examine the tort provision of the long-arm statute, which is not applicable in this case.  *Neagos* at 693.  The *Neagos* court determined <u>on the merits</u> that the corporate predecessors and successors were not liable in the underlying tort and therefore the tortious conduct did not "arise out of" Michigan for purposes of the long-arm statute.  In *Neagos*, without tort liability, there was nothing to impute to the successors under the long-arm statute.  Yet, the court in *Jeffrey* rejected this analysis during  the preliminary stages of the litigation stating "[t]hat liability is not the equivalent of jurisdiction."  *Jeffrey* at 197.  While the issues are "similar," "relevant" and "useful" to the determination of the other, it is only at the end of litigation, "in the final analysis," that a plaintiff must establish both jurisdiction and liability to be successful.  *Id.*  In *Neagos*, the court reserved its determination of jurisdiction until after the close of discovery such that plaintiff had the same ultimate burden as at trial.  *Neagos* at 686. [8]  The instant litigation is in its infancy, thereby

---

[7] Even Defendants' proffer of general jurisdiction facts are belied by Defendants' conduct.  For example, Panavision operates and maintains an <u>interactive website</u> with the stated mission to be the "<u>world leader</u> in the design, development, and manufacture of solid state image sensors, optics, and camera modules." Ex. 10: Panavision website.  http://www.panavisionsvi.com.

[8] Defendants also cite to other cases at a much later stage of litigation.  *Poly-America, Inc. v. Shrink Wrap Int'l,* 200 Mich. App. LEXIS 1580 (Oct. 10, 2000); *Antiphon v. LEP Transport, Inc.* 183 Mich. App. 377 (1990).  The courts in both of these cases had the benefit either of a trial or, at a minimum, full discovery on the issue of liability when they made their determinations.

making Defendants' reference to these ultimate questions of fact untimely and inappropriate.

### 3. Defendants' restricted definition of express assumption of liability is not supported by Michigan law.

Defendants try to escape from having PVS' contacts imputed to them by pointing to *Jeffrey's* use of the phrase "express assumption of liability." Defendants' Brief at 10. First, Defendants' reading of this language is too mechanical and restrictive in the context of constitutional fairness. The fact is that the court in *Jeffrey* did not require additional written contracts or some other formalistic "express assumption" to impute jurisdictional contacts. Interestingly, the court described an almost identical situation to the instant case:

> When Glen Alden purchased old Carey, it acquired old Carey's assets, parts of which were derived from old Carey's substantial business contacts in this state. Glen Alden therefore derived benefits from old Carey's Michigan contacts. In turn, Rapid American benefited from those same contacts through its merger with Glen Alden. Rapid American surely must have known that a portion of old Carey's assets were attributable to old Carey's Michigan business. Rapid American, as a successor to old Carey, reaped the benefits of old Carey's Michigan business and correspondingly should be held to the same jurisdictional qualities of its predecessor. *Jeffrey* at 199.

Here, like in *Jeffrey*, Defendants allegedly acquired all of the predecessor's assets. PVS' assets were derived, at least in part, from the business it had with a Michigan corporation. Indeed, Perceptron alleges in the Complaint that:

> "PVS was primarily financed through contract revenues from Perceptron and others . . . Perceptron's payments effectively developed the assets that PVS turned around and transferred to SVI who, in turn, promptly transferred the assets to Panavision, without any benefit being provided to Perceptron." Ex. 3: Complaint, ¶ 21.

Defendants reaped the benefits of PVS' contacts with Michigan and must have known that a substantial portion of their predecessor's assets were attributable to Michigan business.  Defendants should be held to the same jurisdictional contacts as PVS.

Second, the court in *Jeffrey* used the plain meaning of the phrase "express assumption" of liability in the context of purposeful availment and not in the context of corporate liability on the merits.[9]  Indeed, the court emphasized that corporate conduct was important for jurisdictional purposes:

> We hold that the actions of a constituent corporation may be attributed to a surviving corporation following a merger for purposes of determining the surviving corporation's amenability to personal jurisdiction for liabilities allegedly incurred by the constituent corporation.  While we are cognizant that this rule is <u>typically applied</u> to corporations that are the <u>present corporate embodiment</u> of the predecessor, we find the rule equally applicable when a <u>corporation expressly assumes</u> the liabilities of its predecessors.  *Jeffrey* at 198.

In *Jeffrey*, the court was suggesting <u>additional ways</u> in which a defendant might be haled into court.  Contrary to Defendants' suggestion, the court did not make "express assumption" a jurisdictional requirement.

### 4. Defendants' disclaimers of liability under New York or Michigan corporate law are erroneous and, in any event, untimely at this stage of the proceedings.

Defendants contend that under Michigan or New York law, successor corporations are not liable for their predecessor's liabilities when they merely purchase

---

[9]  The definition of "express" is something "definite and clearly stated."  The American Heritage Dictionary, 4th, ed. (2001).  The court in *Jeffrey* used "express" in the context of jurisdiction to mean conduct that was a "deliberate undertaking" or "purposeful."  The court that defined the term does not support Defendants' overly restrictive definition of "express."  The plain reading suggests that just as oral statements and conduct by an individual can create an "express" agreement under contractual law, the deliberate and purposeful conduct of purchasing assets by a corporation can create an "express" assumption of liability for the purposes of jurisdiction in Michigan.

some assets of the former.  But this is not a mere asset sale.  Under New York law, successor liability will lie when:

> (1) there is an express or implied agreement to assume the other company's debts and obligations; (2) the transaction was fraudulent; (3) there was a de facto merger or consolidation of the companies; or (4) the purchasing company was a mere continuation of the selling company. *Kidz Cloz, Inc. v. Officially for Kids, Inc.*, 2002 U.S. Dist. LEXIS 13058 (S.D.N.Y. 2002) *citing American Buying Ins. Serv. v. S. Kornreich & Sons*, 944 F. Supp. 240, 249 (S.D.N.Y. 1996).

Under Michigan law, the standards are similar.  *See*, *Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 244 N.W. 2d 873 (1976).

Without the benefit of discovery, this Court should reject Defendants' arguments that there is no liability.  First, not only is this issue irrelevant to Defendants' motion at this stage of the litigation, but even their own Declarations identify a triable issue as to whether there was a *de facto* merger or mere continuation of PVS.  Ex. 8: Declaration of Ahlers (e.g. "SVI is in the business of managing royalty payments from machine licensing") and Ex. 9: Declaration of Borofsky (e.g. "Panavision is in the business of developing, having made, licensing, and selling digital imaging technology and related products.").  These statements are almost indistinguishable when read through the lens that Panavision and SVI hold themselves out at the same corporate address, advertise the same products on their interactive website, have many of the same personnel, and conduct themselves as PVS had done.  Second, and most significantly, there is a triable issue because Defendants completely fail to dispute any of Plaintiff's numerous factual allegations of successor liability in ¶¶ 25 and 26 of the Complaint.

Defendants also wrongly cite to *Turner*, and other cases for the proposition that the merger exception listed above cannot apply because there was no transfer of stock during the asset purchase.  Under New York law, the transfer of stock is not required. *Arnold Graphics Indus. Inc., v. Independent Agent Center, Inc.*, 775 F.2d 38, 42 (2nd Cir. 1985).  Moreover, not all of the factors are needed to demonstrate a merger; rather, these factors are only indicators that tend to show a *de facto* merger.  15 Fletcher Cyc. Corp. § 7045.10, pp. 32-35 (1999); *Turner, supra*.

**D.    Transfer Of Venue Is Inappropriate Where Michigan And The Plaintiff Have A Strong Interest In Litigating Here And Where Defendants Otherwise Fail To Meet Their Burden.**

The party seeking transfer bears the burden of demonstrating that "fairness and practicality strongly favor the forum to which transfer is sought."  *Audi AG v. Bob D' Amato*, 341 F. Supp. 2d 734, 749 (E.D. Mich. 2004) (citations omitted).  Moreover, parties seeking transfer, "[m]ust make this showing by a preponderance of the evidence."  *Id.*  Here, Defendants have failed to meet their burden.

First, it should be observed that the court should give deference to the Plaintiff's original choice of forum.  *Audi AG v. Izumi*, 204 F. Supp. 2d 1014, 1023 (E.D. Mich. 2002).  A district court, however, may transfer an action "for the convenience of the parties and witnesses" or "in the interest of justice" assuming the action could have been originally brought in the transferee court.  *See generally, McNic Oil and Gas Co. v. Ibex Resources Co., LLC*, 23 F. Supp. 2d 729, 738 (E.D. Mich. 1998).

Second, on the issue of convenience, Defendants, without offering any specific information, proclaim that "[a]ll the evidence, witnesses, and documents, and other

sources of proof that will be relevant in resolving this case are in New York."  Defs.' Brief at 18 (emphasis added).  This is simply not so.  The very judgment that Plaintiff seeks to enforce, as well as Plaintiff's witnesses and documents are in this District. Defendants fail to provide any specific witness inconvenience information.

Instead, Defendants' argument boils down to the notion that it is inconvenient for them to litigate in Michigan.  But, "[a] transfer is not appropriate if the result is simply to shift the inconvenience from one party to another."  *McNic Oil* at 738.  Here, consideration of costs, justice, and expeditiousness all favor venue in Michigan because: (i) the action has already begun in Michigan; (ii) there is a valid underlying judgment in Michigan; (iii) transfer will cause further delay and added expense; (iv) both States have an interest in preventing corporate abuse; (v) the Agreement specifically allows for enforcement in Michigan; (vi) a New York court has already rejected Defendants' predecessor's attempts to bring parallel litigation in New York.  Ex. 7:  New York Order dated March 16, 2005; and (vii) Panavision is a sophisticated, self-proclaimed "world leader" in the industry,[10] represented by local counsel that can overcome any minor inconveniences of litigating a few hundred miles away.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff requests that Defendants' Motion be denied.

s/Michael J. Lavoie_____
Butzel Long
150 West Jefferson, Suite 100
Detroit, Michigan  48226
(313) 225-7000

Dated:  May 27, 2005            lavoie@butzel.com (P32584)

---

[10] Ex. 10:  Panavision website.  http://www.panavisionvi.com.

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2005, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Todd Mendel, Barris, Sott, Denn & Driker, P.L.L.C., 211 West Fort Street, Fifteenth Floor, Detroit, MI  48226-3281.

s/Michael J. Lavoie
150 W. Jefferson, Suite 100
Detroit, MI  48226
(313) 225-7000
lavoie@butzel.com
(P32584)

757251v2